UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PUBLIC CITIZEN, INC., and PUBLIC CITIZEN )
FOUNDATION, INC.,                        )
    1600 20th Street, N.W.               )
    Washington, D.C. 20009,              )
                                         )
GREENPEACE, INC., and GREENPEACE FUND, INC., )
    702 H Street, N.W.                   )
    Washington, D.C. 20001,              )
                                         )
AMERICAN CHARITIES FOR REASONABLE        )
FUNDRAISING REGULATION, INC.,            )
    3124 N. Tenth Street                 )
    Arlington, VA 22201,                 )
                                         )
and                                      )
                                         )
DMA-NONPROFIT FEDERATION,                )
    1111 19th Street, N.W.               )
    Washington, D.C. 20036,              )
                                         )
        Plaintiffs,                      )
                                         )
v.                                       )   Case No. 8:01 cv 943-T-
                                         )   23 TGW
PINELLAS COUNTY, a political subdivision of )
the State of Florida,                    )
                                         )
and                                      )
                                         )
SHERYL LORD, Director, Pinellas County   )
Department of Consumer Protection,       )
                                         )
        Defendants.                      )
_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

    1.    This is a civil action brought pursuant to 42 U.S.C. § 1983 to challenge the

constitutionality of the licensing and regulatory requirements imposed by Pinellas County,

Florida on charitable organizations that engage in protected speech and interstate commerce with

residents of Pinellas County. Plaintiffs ask that these onerous requirements be declared

unconstitutional and enjoined as violations of the First Amendment, Commerce Clause, and

Fourteenth Amendment Due Process Clause of the United States Constitution.

## JURISDICTION

2.      Plaintiffs bring this action to redress deprivations by the Defendants, acting under

color of state law, of certain rights secured to the plaintiffs and others as alleged herein under the

United States Constitution and 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28

U.S.C. §§ 1331 and 1343.

## PARTIES

3.      Plaintiff Public Citizen Foundation, Inc. is a nonprofit corporation exempt from

federal income taxation under Section 501(c)(3) of the Internal Revenue Code. Plaintiff Public

Citizen, Inc. is a nonprofit corporation exempt from federal income taxation under Section

501(c)(4) of the Internal Revenue Code. Both organizations are incorporated in, and maintain

their principal offices in, Washington, D.C. Unless otherwise expressly provided, references

herein to Public Citizen shall refer to both organizations.

4.      Public Citizen works to promote consumer rights in the marketplace, safe

products, a healthy environment, clean and safe energy sources, and corporate and governmental

accountability. Public Citizen does not conduct business in Pinellas County (except to the extent

that soliciting charitable contributions constitutes conducting business), or maintain an office or

any other physical presence in Pinellas County. Public Citizen has approximately 150,000

members nationwide, of whom approximately 650 reside in Pinellas County. Three of the

2

county residents who have made contributions to Public Citizen did so via Public Citizen's web site. Public Citizen has refused to register to solicit charitable contributions in Pinellas County. Although Public Citizen engages in national direct mail solicitation campaigns, it has, as a direct result of the regulatory regime challenged herein, ceased mailings to non-members residing in Pinellas County.

5.      Plaintiff Greenpeace Fund, Inc. is an organization exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code. Plaintiff Greenpeace, Inc. is a nonprofit corporation exempt from federal income taxation under Section 501(c)(4) of the Internal Revenue Code. Both are incorporated under the laws of the State of California and are headquartered in Washington, D.C. Unless otherwise expressly provided, references herein to Greenpeace shall refer to both organizations.

6.      Greenpeace's mission is to raise public awareness of environmental problems. The organization does not conduct business in Pinellas County (except to the extent that soliciting charitable contributions constitutes conducting business), or maintain an office or any other physical presence in Pinellas County. Greenpeace has approximately 260,000 members nationwide. The organization solicits charitable contributions from residents in Pinellas County as part of national direct mail campaigns. In the year 2000, 567 residents of Pinellas County made donations to Greenpeace, Inc.; forty-three Pinellas County residents contributed to Greenpeace Fund, Inc. The donations to both entities were made both in response to solicitations through direct mail and via Greenpeace's Internet web site. Greenpeace Fund, Inc. has never registered to solicit charitable contributions in Pinellas County. Greenpeace Inc. registered in Pinellas County in 2000, but does not intend to renew its registration in 2001.

7.      Plaintiff American Charities For Reasonable Fundraising Regulation, Inc.

3

("ACFRFR") is a Delaware nonprofit corporation maintaining its principal place of business in
Arlington, Virginia.  ACFRFR is exempt from federal income taxation under Section 501(c)(3)
of the Internal Revenue Code.  ACFRFR does not conduct business in Pinellas County or
maintain an office or any other physical presence in Pinellas County.

      8.      ACFRFR counts among its supporters many charities, professional fundraisers,
professional fundraising consultants, and other concerned persons.  Its charitable purposes
include challenging, in court if necessary, regulations of charitable activities that violate the First
Amendment and other constitutional rights of its supporters.  Many of the charities represented
by ACFRFR conduct direct mail public education and solicitation campaigns throughout the
United States, including in Pinellas County, solicit charitable contributions on their web sites,
and receive contributions from Pinellas County residents via the Internet and the United States
mails.

      9.      Plaintiff Direct Marketing Association, Inc. ("DMA") is a New York nonprofit
corporation maintaining its principal place of business in New York, New York.  DMA, a
membership trade association, is exempt from federal income taxation under 501(c)(6) of the
Internal Revenue Code.  It is appearing in this matter through one of its divisions, the Nonprofit
Federation ("Nonprofit Federation"), which is located in Washington, D.C.  The Nonprofit
Federation does not conduct business in Pinellas County or maintain an office or any other
physical presence in Pinellas County.

      10.     The Nonprofit Federation works on behalf of 550 nonprofit organizations to
achieve "fair regulation for its constituency."  Charities make up the majority of the nonprofit
organizations that it represents.  Many of these charities conduct direct mail public education and
solicitation campaigns throughout the United States, including in Pinellas County, solicit

charitable contributions on their web sites, and receive contributions from Pinellas County residents via the Internet and the United States mails.

11.     ACFRFR and the Nonprofit Federation appear in their representational capacities on behalf of many national nonprofit organizations that solicit charitable contributions in interstate commerce from citizens across the United States, including in Pinellas County. The members and supporters of ACFRFR and the Nonprofit Federation include nonprofit organizations that have received correspondence from Pinellas County demanding that they register and threatening imposition of a fine and civil penalties. Some of these members and supporters have refused to register on the ground that the County's regulatory scheme is unconstitutional and unduly burdensome. Others have registered, but only because they believed they had little choice. The nonprofit organizations represented by ACFRFR and the Nonprofit Federation wish to remain anonymous both for reasons of public relations and marketing and for fear of reprisal by Pinellas County. Because the Pinellas County regulatory scheme for charitable solicitations has violated, and continues to violate, the constitutional rights of these members and supporters of ACFRFR and the Nonprofit Federation in the manner described below, ACFRFR and the Nonprofit Federation appear on their behalf to challenge this regulatory scheme.

12.     Unless otherwise expressly provided, references herein to "Plaintiffs" shall refer to Public Citizen, Greenpeace, and the charitable organizations that ACFRFR and the Nonprofit Federation represent.

13.     Defendant Pinellas County ("County") is a county of the State of Florida, chartered pursuant to Article VIII of the Florida Constitution. Florida law gives the County the authority to pass laws regulating charitable solicitations. Fla. Stat. ch. 496.421. Pinellas County

has promulgated Ordinance No. 93-106, which, as amended and codified at Pinellas County

Code §§ 42-266 to -344 ("the Ordinance"), regulates charitable solicitations.

14.      Defendant Sheryl Lord ("Director") is the Director of the Pinellas County

Department of Consumer Protection ("Department") and a Code Enforcement Officer under the

Ordinance.  She is sued in her official capacity.  The Director and her Department are

responsible for administering and enforcing the Ordinance.  Under the Ordinance, unless a

charitable organization has a valid permit from the Department, it may not lawfully solicit

charitable contributions from residents of Pinellas County who are not already members of the

charitable organization.  The Director is vested with authority to grant or renew charitable

solicitations permits, Pinellas County Code § 42-276(a); to deny, suspend, or revoke charitable

solicitations permits for any violation of the Ordinance, Id. § 42-276(e); as well as to issue

citations for violations of the Ordinance, which can lead to civil fines and even imprisonment.

Id. § 42-276(f); see also Fla. Stat. ch. 125.69(1).

## STATEMENT OF FACTS

### Public Citizen's Cessation of Protected Speech in Pinellas County

15.      On September 18, 1997, Public Citizen received a letter from the Department

stating that the Department had received information that Public Citizen may be soliciting

donations in the County and that the Ordinance requires that any organization soliciting for

charitable purposes "must first obtain a permit from this office if they are soliciting in Pinellas

County."

16.      Because of the onerous registration and reporting requirements imposed by the

Pinellas County Ordinance, described below, Public Citizen elected to halt all solicitations of

non-members in Pinellas County.

17.     In a letter dated January 25, 2000, the Department again wrote Public Citizen that it had received information that Public Citizen may be soliciting donations in the County and that the Ordinance requires organizations soliciting charitable contributions first to obtain a permit from the Department.  The Department warned that "[f]ailure to comply with Pinellas County Code, Section 42-292, within fifteen (15) days may subject you to a fine and civil penalties."

18.     In a letter dated February 17, 2000, the Chief Operating Officer of Public Citizen responded that the Ordinance is unconstitutional and that, consequently, Pinellas County has no authority either to regulate charitable solicitations or to require Public Citizen to obtain a permit from Pinellas County prior to any solicitation.  The letter confirmed, however, that Public Citizen had instructed its fundraising counsel to suppress mail solicitations to Pinellas County, but that Public Citizen continued to correspond with, and request contributions from, Public Citizen's approximately 650 members who reside in Pinellas County because the Ordinance does not apply to the solicitation of a charitable organization's current members.  Pinellas County Code § 42-272(a).

19.     In addition, as of April 2001, Public Citizen had received through its web site contributions from three Pinellas County residents, none of whom previously had contributed to Public Citizen.  Although the Ordinance purports to require any charity that has received a charitable contribution from a county resident via the Internet to register in the County, see Pinellas County Code § 42-310, Public Citizen has refused to do so because of the burden and expense involved.

20.     Public Citizen no longer wishes to refrain from soliciting non-members in

Pinellas County or to be subject to civil or criminal penalties if it is found to be in violation of

the Internet provision of the Ordinance. After engaging in a thorough review of the Ordinance,

Public Citizen has concluded that Pinellas County's burdensome and costly licensing regime

violates the United States Constitution and that the County has no authority to demand

registration based only on the fact that Public Citizen has received contributions from County

residents through its web site.

## Federal and State Regulation of Charitable Solicitation

21.     The Ordinance's registration and reporting requirements, described more fully

below, represent only one facet of the extensive obligations imposed on charitable organizations

by Federal laws and approximately forty State regulatory regimes. The requirements imposed

by these State and Federal regulatory regimes serve the same interests that the Ordinance

purports to serve—preventing fraud and providing members of the public with access to

information on charities.

22.     Tax-exempt charitable organizations such as Plaintiffs are regulated by the

Internal Revenue Service ("IRS"). In order to gain tax-exempt status, an organization must file a

detailed application with the IRS, including a copy of the organization's articles of incorporation

and bylaws, and statements describing the character of the organization, the purpose for which it

was organized, its proposed or actual activities, and the sources of the organization's income and

receipts and their disposition. See IRS Forms 1023, 1024; 26 C.F.R. § 301.6104(d)-1. For

example, in order to maintain their tax-exempt status, Plaintiffs must file an IRS Form 990

"Return of Organization Exempt from Income Tax" ("Form 990") each year. The information

required on the Form 990 includes: the names and addresses of officers, directors, trustees, and

key employees; total amounts of contributions, gifts, and grants; other sources of revenue; total expenses broken down by type, including fundraising expenses; a statement of program service accomplishments; and a list of States where the organization files its Form 990.  In addition, organizations that are tax-exempt under Section 501(c)(3) of the Code must list the compensation of the five highest paid employees, compensation of the five highest paid independent contractors for professional services, the amount (if any) spent on direct and grassroots lobbying, and the percentage of the organization's income that came from public support for the previous four fiscal years.  If the IRS has questions about the continued validity of an organization's tax-exempt status, it has the authority to conduct an audit and, in appropriate cases, revoke the tax exemption.

23.     The IRS requires that both the application for tax exemption and the organization's three most recent Form 990s be made available for public inspection and copying. 26 C.F.R. §§ 301.6104(d)-1(a), -2.  An organization may comply with these disclosure requirements by posting downloadable copies of its forms on a publicly accessible web site.  26 C.F.R. § 301.6104(d)-2.  Public Citizen and many nonprofit members or supporters of ACFRFR and the Nonprofit Federation maintain on their web sites, in downloadable form, their current Form 990 and the Form 990s for the previous two years.  See, e.g., http://www.citizen.org/form990/form990.htm.

24.     Organizations that solicit through the United States mails are also subject to regulation by the United States Postal Service, which enjoys broad authority to determine what constitutes "nonmailable matter," which cannot legally be sent through the mails, and to prevent the U.S. mails from being used to perpetrate fraud.  39 U.S.C. §§ 3001, 3005.  Congress has specifically empowered the Postal Service to eliminate from the U.S. mails any matter sent to

further a scheme or device for obtaining money or property by false representations. If the Postal Service determines that a person is using the mails to engage in fraudulent activity or receive funds under false pretenses, the Postal Service may initiate an investigation and take administrative action against the offending person, culminating in the entry of an order that (a) directs the postmaster to return to the sender mail addressed to the offending person, marked as in violation of § 3005; (b) forbids the payment by the postmaster of money orders made out to the offending person; and (c) requires the offending person to cease and desist from engaging in any such scheme. 39 U.S.C. § 3005(a); 39 C.F.R. Part 952.

25.     The State of Florida has also passed a comprehensive statute regulating charitable solicitations. See Fla. Stat. ch. 496 (Solicitation of Funds). The law requires extensive disclosures by charitable organizations, professional fundraising consultants, and professional solicitors, both at the time of registration and in connection with actual solicitations. Fla. Stat. ch. 496.405, .409 to .412. The statute obligates charities intending to solicit contributions in the State to file an initial registration statement prior to engaging in any solicitation and a renewal statement annually thereafter. Fla. Stat. ch. 496.405. The registration and renewal statements must be submitted on forms prescribed by the State and accompanied by an annual financial report or copy of the charitable organization's Form 990 for the preceding fiscal year and by the registration fee. Fla. Stat. ch. 496.405, .407. The State maintains a web site that provides members of the public with access to information about charitable organizations, fundraising consultants, and solicitors registered with the State. See http://www.800helpfla.com (last visited

May 9, 2001). Public Citizen, Greenpeace, and many nonprofit members or supporters of

ACFRFR and the Nonprofit Federation are registered to solicit as charitable organizations under

the Florida statute.

### The Pinellas County Ordinance

26.     Despite the duplication in content and purpose with the IRS, Postal Service, and

Florida regulations discussed above, Pinellas County enacted its own Charitable Solicitations

ordinance requiring charities to apply for and receive an annual permit from the Department

prior to sending charitable solicitations to Pinellas County residents (except for solicitations

directed at a charity's current members). Pinellas County Code § 42-291. Thus, the Ordinance

bars Plaintiffs from using the U.S. mails and other means of interstate communication to solicit

Pinellas County residents unless and until they obtain approval from the County.

27.     A recent amendment to the Ordinance, adopted on July 11, 2000, further requires

registration by all charitable organizations "that receive contributions from the citizens of

Pinellas County as a result of Internet solicitation for charitable purposes," regardless of whether

the charitable organization purposefully directs any solicitation, or gears its web site, Internet

advertising, or e-mail, toward Pinellas County residents. See Ordinance No. 00-52, § 1 (2000)

(codified at Pinellas County Code § 42-310(b)). The Internet registration requirement also

applies regardless of the level of "contacts" or "nexus" between the organization and the County.

28.     Each application and renewal under the Ordinance must be accompanied by a

nonrefundable filing fee in accordance with the sliding fee schedule set by the Board of County

Commissioners. Pinellas County Code § 42-292(b), -294(c); Pinellas County, Florida,

Department of Consumer Protection, Charitable Solicitation New Permit Application ("New

11

Permit Application") (setting the fee schedule). The fee is based on the amount of contributions the charity received from residents of Pinellas County during the previous fiscal year. Based on the level of contributions that Public Citizen received during the past fiscal year, it would be required to pay an annual fee of $60 if it registered with the County. Greenpeace, Inc. paid a registration fee of $20 in 2000. The County's fee schedule does not appear to be based on the level of the Department's enforcement activities or otherwise rationally related to any legitimate oversight function performed by the Department.

29.     Violations of the Ordinance—including the sending of solicitations into Pinellas County without first obtaining a permit and the receipt of contributions via the Internet without registering with the County—are punishable by a civil fine of up to $500. Pinellas County Code § 42-268 (incorporating by reference Pinellas County Code § 1-8). In addition, under Florida law, violations of the Ordinance appear to be misdemeanors punishable by a fine not to exceed $500 or by imprisonment in the county jail not to exceed 60 days, or both. Fla. Stat. ch. 125.69(1).

30.     In order to obtain a charitable solicitations permit from Pinellas County, a charity must file a sworn application on the County's own form and submit additional materials specified in both the Ordinance and on the form. All of the information submitted to the County to obtain a new or renewal permit is available to the public. Pinellas County Code § 42-270.

31.     As more fully discussed below, the Ordinance and prescribed application form are constitutionally objectionable because they (a) seek intrusive personal identifying information to which Pinellas County is not entitled; (b) impose oppressive financial reporting requirements that Plaintiffs cannot reasonably satisfy; (c) demand telephone scripts and copies of all solicitations, creating the potential for censorship based on the content of charitable speech;

(d) place unfettered discretion in the hands of the Director by providing numerous grounds upon which the Director "may" deny, suspend, or revoke the charitable solicitations permit, or give citations for violations; (e) fail to provide adequate procedural safeguards to ensure that the prior restraint entailed by the licensing requirement does not lead to the indefinite silencing of speech; and (f) include a substantially overbroad requirement that any charitable organization receiving a charitable contribution via the Internet register in the County.

32.     For example, the Ordinance, considered together with the New Permit Application, requires, inter alia:

(a)     Invasive and Burdensome Requests for Personal Identifying Information

(1)     The name, title, address, telephone and fax numbers, date of birth, and driver's license number (which, for many people, is the same as their Social Security number), for (i) the charity's chief officer, (ii) the person managing the solicitation described in the application, (iii) the person with control of the financial records, (iv) the manager of any telephone room used to call into Pinellas County, and (v) the person to be contacted regarding any problems with the application.  New Permit Application, ¶¶ 7-11; see also Pinellas County Code § 42-292(a)(5).  The address, telephone, and fax numbers sought apparently are the individuals' residential, and not business, information because the form elsewhere seeks the same information for the organization itself.  New Permit Application, ¶ 3.  Dates of birth, driver's license numbers, residential addresses, and residential telephone numbers are often highly personal pieces of information in which individuals have a recognized privacy interest.

(2)     A statement as to whether any director, officer, or employee of the applicant is related as parent, spouse, child, or sibling to any other director, officer,

owner, or employee of the applicant, or to any vendor or supplier (presumably including their officers and employees) that provides goods or services to the applicant. Pinellas County Code § 42-292(a)(7); see also New Permit Application, ¶ 27. This requirement is unduly burdensome because, for example, it would force Public Citizen to investigate the relationships among its approximately 90 officers and employees and all of their designated family members, as well as the hundreds of officers and employees of the law firms, fundraising consultants, accounting firms, print shops, mail houses, custodial and janitorial companies, office supply stores, and myriad other entities with which Public Citizen contracts for goods and services. The other Plaintiffs face similar burdens under this provision.

(3)     Disclosure of whether any director, supervisor, manager, or person with authority to receive and/or disburse solicitation income has ever been employed by or a member of another organization registered under the Ordinance, and if so, the name of such individual and the name of the other organization. New Permit Application, ¶ 24. This provision is unduly burdensome because it requires Plaintiffs to investigate for every designated person, which includes nearly every manager of the organization and nearly every employee in their Development and Accounting Departments, the identities of all other organizations for which these individuals have ever worked and then to determine whether any of these other organizations is currently registered in Pinellas County.

(b)     Unreasonable Demands for Solicitation Information:

(1)     A copy of any agreement between the applicant and any federated fundraising organization (such as United Way), professional fundraising consultant, or

14

professional solicitor, as broadly defined by the County.  Pinellas County Code

§ 42-292(a)(6); New Permit Application, ¶ 29(C); see also Pinellas County Code

§ 42-266 (definitions).

      (2)    For each activity involving solicitation:  (i) the "name" of the

solicitation; (ii) the manner or method of solicitation; (iii) the "contemplated" receipts

and expenses of the solicitation; (iv) the proportion of the contributions which will go

toward the object of the solicitation; (v) the distribution plan for collected contributions;

and (vi) written copies of the wording of any verbal solicitation, including any telephone

"pitch," and copies of printed solicitation materials.  Pinellas County Code

§ 42-292(a)(12); see also New Permit Application, ¶¶ 5A, 12, 13, 29(H).  Much of this

requested information is either burdensome to compile and produce, proprietary or

sensitive in nature, or, in the case of solicitation materials, not available because they are

not yet developed and/or are changed frequently.

      (c)    Unreasonable and Oppressive Financial Reporting Requirements:

     In addition to requiring the charitable organization to submit its prior tax year

Form 990, Pinellas County Code § 42-242, ¶ 9; New Permit Application, ¶ 29(A), the

County also demands reporting of the following items of anticipated financial

information for the coming year:  (i) Expected gross revenue; (ii) Expected contributions;

(iii) Projected program services; (iv) Anticipated management and general expenses,

broken out into detailed items that do not conform to the bookkeeping categories used by

Plaintiffs; and (v) Fundraising Expenses.  New Permit Application, ¶¶ 14, 15, 16.  Not

only does the County demand reporting of expenses at a level of specificity not

maintained by Plaintiffs, or required by any other regulatory body, but its requirement

15

that charities report "anticipated," in addition to its actual prior, financial performance,

imposes a significant burden and requires the public disclosure of confidential

information about the charities' financial and fundraising plans for the coming year.

33.    The Ordinance also requires charities to comply with onerous renewal and interim

reporting requirements:

(a)    Change of Information:  Whenever the information required by the

Ordinance has changed, the permit holder must submit the changes within 15 days.

Pinellas County Code § 42-294(b)(4).  This requirement would apply whenever, for

example, a new officer or director is appointed, a designated official moves his or her

home or obtains a new driver's license, a relative is hired by an entity with which the

charity contracts, or, most significantly, new solicitation materials are developed.

(b)    Renewal:  Charitable organizations must submit a renewal application

annually with the registration fee and the required financial reporting information.

Pinellas County Code § 42-294(c); Pinellas County, Florida, Department of Consumer

Protection, Charitable Solicitation Renewal Application ("Renewal Application").  The

Renewal form requires a current list of the organization's officers and directors,

including name, title, address, birth date, and telephone number, Renewal Application,

List of Required Attachments, ¶ III, and the name, title, address, telephone number, date

of birth, and driver's license number for the charity's chief elected, executive, or

operating officer and for the person to be contacted regarding any problems with the

renewal application.  Renewal Application, at 2.  The Renewal Application again seeks

copies of the charity's IRS Form 990 for the previous fiscal year and copies of

agreements between "solicitation income beneficiaries and affiliated fundraisers."  Id.,

16

List of Required Attachments, ¶¶ II, V.  The form also requires examples of current

printed materials used in solicitations and the wording of verbal solicitations, or

"telephone pitches."  Id., List of Required Attachments, ¶ I.  Finally, the Renewal

Application incorporates all previous reporting requirements by requiring the person

signing the form to affirm "that no information which would affect the issuance of this

permit has been withheld; that information given in previous sworn applications has not

changed except as stated in an attachment."  Renewal Application, at 3 (required

certification).

34.     Much of the information required by Pinellas County is duplicative of the

information submitted by Plaintiffs to the IRS and Florida.  The additional information that is

demanded by Pinellas County, but not by the IRS or Florida, is proprietary, invasive of the

personal privacy interests of Plaintiffs' officers and employees, and/or unnecessary for any

legitimate purpose of the County.

35.     Pinellas County and the State of Florida are not alone in regulating charitable

solicitation.  Thirty-seven other States and the District of Columbia require charitable

organizations to register if they intend to solicit in those jurisdictions.  See

http://www.nonprofits.org/library/gov/urs (last visited May 9, 2001).  The nature of what must

be reported to each State varies widely, with some States imposing significantly more

burdensome registration requirements than Florida.  As cities and counties have added to the

State and Federal regulatory burden by imposing a multitude of disparate registration and

reporting requirements (and fees) of their own on charities, compliance with the numerous sets

of regulations has become increasingly burdensome, costly, and difficult.  Indeed, for well over a

year, Public Citizen has refrained from engaging in protected speech in Pinellas County

17

precisely because of the burdens and cost involved in complying with the County's oppressive

registration and reporting requirements.

### Prior Restraint

36.    In addition to the considerable hardships it imposes on charitable organizations,

the Ordinance works an unconstitutional prior restraint on protected speech by requiring first,

that charities obtain permission from the County in advance of sending any solicitations to its

residents, and second, that charities refrain from contracting with any professional solicitor,

professional fundraising consultant, or federated fundraising agency before such solicitor,

consultant, or agency has been issued a charitable solicitations permit by the Department. These

prior restraints are not accompanied by adequate procedural safeguards.

37.    For example, the Ordinance places unbridled discretion in the hands of the

Director to censor speech by providing that the Director "shall" deny a permit for any one of five

specified reasons. Among these are the vague and subjective grounds that an application

contains "material false information" or "omits material information." Pinellas County Code

§ 42-293(c).

38.    Moreover, the Ordinance confers broad censorship power on the Director by

providing that the Director "may" deny, suspend, or revoke the permit of any person for any

violation of the Ordinance. Pinellas County Code § 42-276(e). The Ordinance lists numerous

prohibited acts, any one of which can serve as a basis for the denial, suspension, or revocation of

the permit, as well as grounds for civil penalties. For example, the Ordinance specifies that it

shall be a violation to make "a false or misleading statement, deception or fraud in connection

with any solicitation of any contribution" by any charity. Id. § 42-323. Coupled with the

requirement that charitable organizations submit scripts of verbal solicitations and copies of

written solicitations, the Ordinance confers unfettered discretion on the Director to deny,

suspend, or revoke a charitable organization's solicitations permit based on her judgment that the

organization has made "a false or misleading statement, deception or fraud" in any of the

submitted solicitations.

39.     Finally, the Ordinance threatens indefinite and unconstitutional censorship by

failing to specify a time limit for a post-hearing decision concerning the denial of a new permit

or renewal application.  See Pinellas County Code § 42-293.  The Ordinance also fails to

guarantee prompt judicial review and fails to place the burden of initiating judicial proceedings,

and the burden of proof once in court, on the County.  See id. § 42-278.

### The Nature of the Injury to Plaintiffs from the Pinellas County Regulatory Scheme

40.     The Ordinance and the County's accompanying application and renewal forms

place Plaintiffs in an untenable position by forcing them to choose, on the one hand, between

complying with an unconstitutionally burdensome law that imposes an impermissible prior

restraint on speech and, on the other, subjecting themselves to potential enforcement actions and

reprisals by the County and the possibility of adverse publicity and reduced charitable

contributions because of Plaintiffs' status as alleged violators of the law.

41.     Monetary damages cannot compensate Plaintiffs for the loss of their

constitutionally protected rights under the First Amendment, Commerce Clause, and Fourteenth

Amendment Due Process Clause of the Constitution.  Thus, there is no adequate remedy at law

to redress Plaintiffs' grievances.  Unless Defendants are enjoined from enforcing the Ordinance,

Plaintiffs' ability to engage in protected speech and interstate commerce will be

unconstitutionally abridged.

19

### FIRST CAUSE OF ACTION
**(First Amendment - Prior Restraint - Registration Requirement)**

42.    The Pinellas County licensing and regulatory scheme, which requires Plaintiffs to apply for and receive a charitable solicitations permit before they may communicate with and seek charitable solicitations from, residents of Pinellas County who are not already members of Plaintiffs, is an impermissible prior restraint of free speech because it lacks adequate procedural safeguards and places unbridled discretion in the hands of Defendants to delay and censor protected speech.  As such, the Ordinance and the accompanying forms violate the First Amendment and 42 U.S.C. § 1983.

### SECOND CAUSE OF ACTION
**(First Amendment - Undue Burden - Registration and Reporting Requirements)**

43.    The Pinellas County registration and reporting requirements are unduly onerous, demanding detailed, extensive, and intrusive information from charitable organizations at a level of specificity with which Plaintiffs cannot comply without incurring prohibitive costs.  As such, the Ordinance and the accompanying forms impose an impermissible burden on Plaintiffs' right of free speech in violation of the First Amendment and 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION
**(Commerce Clause - Undue Burden - Registration and Reporting Requirements)**

44.    The Pinellas County registration and reporting requirements are unduly onerous, demanding detailed, extensive, and intrusive information from charitable organizations at a level of specificity with which Plaintiffs cannot comply without incurring prohibitive costs.  These requirements impose a burden on interstate commerce that is clearly excessive in relation to their putative benefits and purport to serve public purposes that can readily be promoted with a much

20

lesser burden on interstate commerce. As such, the Ordinance and the accompanying forms

unreasonably burden interstate commerce in violation of the Commerce Clause of the United

States Constitution and 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION
### (First Amendment, Commerce Clause, Due Process Clause - Internet Provision)

45.     The Internet registration requirement of the Ordinance, described in paragraph 27

above, is overbroad on its face, in violation of the First Amendment. The requirement that

charitable organizations such as Plaintiffs register and pay a fee in the County simply because

they received a charitable contribution via the Internet chills protected speech by placing a price

tag, and imposing the burdens of registration, on the right to engage in the vibrant exchange of

ideas on the Internet. This Internet provision transforms a significant number of speakers who

have no contact whatsoever with the County into violators of the law by providing that even a

single contribution from a Pinellas County resident triggers a requirement that the recipient of

the donation register in, and pay a filing fee to, the County. The provision covers a substantial

quantity of constitutionally protected speech, reaches more broadly than is reasonably necessary

to protect legitimate state interests, and therefore violates the First Amendment.

46.     In addition, Pinellas County lacks jurisdiction to require charities, such as

Plaintiffs, that have received charitable contributions from County residents to register without

regard to the charities' other contacts with the County and without regard to whether the

organizations purposefully have directed their web sites or other activities toward Pinellas

County residents. Contributions from Pinellas County residents to Plaintiffs via their web sites

alone fail to give rise to the "minimum contacts" required to confer jurisdiction under the

Fourteenth Amendment Due Process Clause or to establish the nexus between Plaintiffs and the

County required by the Commerce Clause of the Constitution.

47.     Accordingly, the Internet registration requirement violates the First Amendment, the Fourteenth Amendment Due Process Clause, and the Commerce Clause of the United States Constitution, and 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

(1)     Declare that the Pinellas County licensing requirement constitutes an impermissible prior restraint of Plaintiffs' speech, in violation of the First Amendment of the United States Constitution, and 42 U.S.C. § 1983;

(2)     Declare that the Pinellas County registration and reporting requirements impose impermissible burdens on Plaintiffs' right of free speech, in violation of the First Amendment and 42 U.S.C. § 1983;

(3)     Declare that the Pinellas County registration and reporting requirements impose unreasonable burdens on Plaintiffs' right to solicit contributions through interstate commerce, in violation of the Commerce Clause and 42 U.S.C. § 1983.

(4)     Declare that the requirement in the Pinellas County Ordinance that charities, such as Plaintiffs, that have received contributions through the Internet register in the County, regardless of their level of contacts with and nexus to the County, is overbroad on its face and violates the First Amendment, the Commerce Clause, and the Fourteenth Amendment Due Process Clause, and 42 U.S.C. § 1983.

(5)     Enjoin Defendants from enforcing the Pinellas County Ordinance and from using the accompanying application and renewal forms;

(6)     Award Plaintiffs their costs and disbursements in this action, including reasonable

attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988; and

(7)     Grant Plaintiffs such other and further relief as may be just and proper.


Dated: May 16, 2001                    Respectfully submitted,


                                       Bonnie I. Robin-Vergeer
                                       Trial Counsel
                                       Alan B. Morrison
                                       Public Citizen Litigation Group
                                       1600 20th Street, N.W.
                                       Washington, D.C.  20009
                                       (202) 588-1000
                                       Fax (202) 588-7795


                                       Geoffrey W. Peters
                                       Geoffrey W. Peters, P.C.
                                       9024 Trailridge Court
                                       Vienna, VA  22182
                                       (703) 356-8703
                                       Fax (703) 356-0684


                                       Robert R. Hearn
                                       Florida Bar No. 0067687
                                       Zuckerman Spaeder, L.L.P.
                                       401 East Jackson Street, Suite 2525
                                       Tampa, FL  33602
                                       (813) 221-1010
                                       Fax (813) 223-7961


                                       Counsel for Plaintiffs


                                       23